UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **JIM WILLIAMS, for himself and as next friend of T. W., a minor child, and RANDY SCHONAGEN,** | ) | |
| Plaintiffs, | ) | **JURY DEMANDED** |
| vs. | ) | Civil No.________________ |
| **JOHN WITSELL, in his individual capacity,** | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Come now the Plaintiffs, by and through counsel, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny, and sue the Defendant for damages for violation of the Plaintiffs' federal constitutional rights. For cause of action the Plaintiffs would show as follows:

### I. JURISDICTION AND PARTIES:

1) This Court has jurisdiction over the claims asserted herein pursuant to 28 United States Code § 1331 and 1343(a).

2) The Plaintiff Jim Williams is a resident and citizen of Knox County in the Eastern District of Tennessee. He sues on behalf of himself and as next friend of his son T.

W., a child who, at the time of the events complained of, was five years old.

3) The Plaintiff Randy Schonagen is a resident and citizen of Knox County in the Eastern District of Tennessee.

4) The Defendant John Witsell is, on information and belief, a resident and citizen of the Eastern District of Tennessee. At all times relevant to this action, Mr. Witsell has been employed as an agent of the United States Citizen and Immigration Services (USCIS), an agency of the United States Government. He is sued in his individual capacity pursuant to the *Bivens* doctrine.

5) Venue is proper in this Court, the actions and omissions complained of having occurred in Knox County in the Eastern District of Tennessee.

## II. FACTS SHOWING PLAINTIFFS' ENTITLEMENT TO RELIEF:

### A. Defendant's conduct:

6) On or about June 16, 2006, the Plaintiffs herein learned that an employee of their Company, Earth Traverse Outfitters, located in Knoxville, Tennessee, had possibly stolen funds from the Company and transferred it overseas for illicit purposes. Plaintiffs had also become aware of the fact that the employee suspected of stealing money from the Company was residing in the United States under false pretenses, possibly in violation of federal immigration laws.

7) The Plaintiffs sought the assistance of the USCIS regarding the problem employee's unlawful residence in the United States. The Plaintiff, Randy Schonagen, contacted the local USCIS office, explained the problem they had with the employee and the evidence he and the Plaintiff Williams had discovered. Mr. Schonagen was told to

go to the local field office located at 324 Prosperity Drive in Knoxville, Tennessee.

8) Upon arriving at the INS field office on June 16, 2006, the Plaintiffs, accompanied by T. W., the minor child of the Plaintiff Williams, appeared with documentary evidence to show the agency personnel. The Plaintiffs and T. W. were escorted to an conference room in which they were introduced to the interviewing agent, John Witsell, the Defendant herein.

9) During the interview by Agent Witsell, the Plaintiffs had a video camera (hand held by the Plaintiff Schonagan) and an audio recording device. The video camera was at all times clearly visible to the USCIS agents and their staff. Neither Agent Witsell nor any other person made any objection to audio and/or video recording of the interview.

10) The Plaintiff, Jim Williams, made it clear to Agent Witsell that the recording devices were for him to be able to keep a record of the evidence submitted that day, for his use in a book he was going to write in order to apprise the public of the agency's shoddy work on immigration issues and to explain what steps he and the Plaintiff, Randy Schonagen, had to go through to get the USCIS to take notice of their grievances.

11) Further, the video stored or housed in the camera contained evidence which the Plaintiffs intended to be provide to the agency regarding the employee of the Plaintiffs' company.

12) Approximately ten minutes into the interview, the Plaintiff, Jim Williams, communicated to the Defendant Witsell that he was going to use the video recording of the interview to make public the agency's refusal to investigate his claim and take

appropriate steps to enforce the laws of the United States.

13) Upon hearing the Plaintiff Williams' comments, Agent Witsell became enraged and demanded the camera be surrendered to him by the Plaintiff Schonagen.

14) When Mr. Schonagan hesitated to immediately turn the video camera over to Agent Witsell, Mr. Witsell lunged across the table, grabbed Mr. Schonagen's arm and twisted it violently until he forcibly wrested the camera Mr. Schonagan's grasp.

15) Agent Witsell's twisting of Mr. Schonagan's arm, was sufficiently violent to rotate Mr. Schonagen's body and force the release of his tight handhold on the camera and was severe enough to necessitate emergency medical treatment.

16) At the outset of the fracas between Mr. Witsell and Mr. Schonagen, the Plaintiff Williams' young child, T. W., was sitting in Mr. Schonagen's lap. The unprovoked attack by Mr. Witsell caused T. W. to be thrown to the conference room floor, traumatizing the child and causing the child to suffer bodily injuries.

17) After Agent Witsell had seized the camera from Mr. Schonagan and knocked the five year old child to the floor, Agent Witsell began screaming at the Plaintiffs and then grabbed his sidearm and unbuckled it from its holster as if he were going to draw down on the Plaintiffs and screamed at the Plaintiffs, "When a federal agent orders you to do something, you'd better do it!".

18) The Plaintiff Williams pleaded with Agent Witsell to stop screaming, explaining that he had severe heart problems and could easily suffer a major heart attack and that it was extremely upsetting to his young child.

19) Agent Witsell then demanded that the Plaintiff Williams turn over the audio recorder that Mr. Williams had on his person. Mr. Williams did so out of fear that

he, too would be assaulted by Agent Witsell as Mr. Schonagen had been.

20) Upon taking possession of Mr. Williams' audio recorder, Agent Witsell began to erase all of the recorded information.

21) The Plaintiffs asked for their video camera and voice recorder back from the Agent Witsell, who refused to return the camera. Agent Witsell did return the voice recorder, but only after fully erasing the contents stored therein.

22) The contents of the audio recorded had included other information, unrelated to the matter as to which the Plaintiffs had sought USCIS assistance, which was important to the Plaintiff Williams' business. This information was erased by Agent Witsell.

23) The agency later returned the video camera to the Plaintiff in a damaged condition.

24) As a result of the Defendant's violent and reprehensible conduct, the Plaintiffs have curtailed their criticism of the USCIS, such that the Defendant's actions have chilled the Plaintiffs' exercise of rights of free expression.

25) During the above-described events, the Plaintiffs and the Plaintiff Williams' young son feared for their lives.

26) As a result of the Defendant's actions the Plaintiff Schonagen, suffered severe pain to his wrist and arm, causing him to have to seek medical attention at the hospital and to incur medical bills and expense therefor.

27) As a result of the Defendant's actions both Plaintiffs have undergone psychological counseling or treatment and have incurred bills and expenses therefor.

28) As a result of the Defendant's actions the Plaintiff Williams' five year old son has suffered from nightmares, cannot sleep at night, has a constant fear of law enforcement officials now and has had to seek the help of a child psychologist due

Case 3:07-cv-00243 Document 1 Filed 06/15/07 Page 5 of 8 PageID #: <pageID>

to the violent attack on the Plaintiffs. The Plaintiff Williams has incurred bills and expenses for his son's mental health treatment.

29) As a result of the Defendant's actions each of the Plaintiffs and T.W. has suffered extreme anxiety and severe emotional distress.

30) The loss of information stored on his audio recorder has worked a hardship on the Plaintiff Williams' conduct of his business.

31) The Plaintiffs aver that the Defendant's conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of the Plaintiffs, so as to make appropriate an award of punitive or exemplary damages under *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

**B. First cause of action:**

32) The Plaintiffs aver that the conduct of the Defendant involved the arbitrary, sadistic and malicious infliction of harm unrelated to any legitimate governmental objective.

33) The Plaintiffs aver that the conduct of the Defendant is so shocking to the conscience as to amount to a violation of substantive due process guaranties, both as to the individual Plaintiffs and on behalf of the Plaintiff Williams' five year old child.

**C. Second cause of action:**

34) The Plaintiffs aver that, if and to the extent that the Defendant's actions can be deemed a search or seizure for Fourth Amendment purposes, the Defendant employed unreasonable and excessive force in effecting such search or seizure in contravention of Fourth Amendment guaranties, both as to the Plaintiff Schonagen and on behalf of the Plaintiff Williams' five year old child.

**D. Third cause of action:**

35) The Plaintiffs aver that the conduct of the Defendant constitutes unlawful and unconstitutional retaliation for the individual Plaintiffs' exercise of rights of free expression and is thus actionable under the First Amendment to the United States Constitution.

**E. Fourth cause of action:**

36)The Plaintiffs aver that the conduct of the Defendant had a chilling effect on the individual Plaintiffs' exercise of First Amendment rights of free expression.

**F. Fifth cause of action:**

37) The Plaintiffs aver that the Defendant's confiscation of the video camera, the refusal to return the camera upon request and the destruction of the information stored on the audio record constituted deprivations of property without procedural due process.

**III. DEMAND FOR RELIEF:**

THE FOREGOING PREMISES CONSIDERED, the Plaintiffs respectfully make the following demand for relief:

A) That process issue and the Defendant be summoned to answer the averments of this complaint;

B) That this case be tried before a jury;

C) That they be awarded compensatory damages in the amount of $750,000 or more;

D) That they be awarded punitive damages in the amount of $1,500,000 or more;

E) That the costs of this action be assessed against the Defendant;

F) That they have such further or general relief as may be appropriate under the facts and circumstances of this case.

Respectfully submitted,

JOHN E. HERBISON # 12659
2016 Eighth Avenue South
Nashville, Tennessee 37204
(615) 297-5900

RUSSELL L. EGLI # 24408
P.O. Box 23185
9724 Kingston Pike, Suite 305A
Knoxville, Tennessee 37933
(865) 531-8192

Attorneys for Plaintiffs